# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JANE DOE,

     APPELLANT,

        -AGAINST-                  No. 26-1320

LEON BLACK,

     APPELLEE.

## REPLY IN SUPPORT OF PLAINTIFF-APPELLANT'S MOTION FOR STAY <u>PENDING APPEAL</u>

Dated: May 21, 2026

Jane Doe
Plaintiff-Appellant, *Pro Se*
P.O. Box 286
Haymarket, Virginia 20169
202-407-6947
Jane.doe06418@gmail.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................... i, ii

TABLE OF AUTHORITIES.................................................................... iii

PRELIMINARY STATEMENT...............................................................1

ARGUMENT ...................................................................................2

I. PLAINTIFF HAS SATISFIED THE STANDARD FOR A STAY
PENDING APPEAL ……………………………………………………….2

II. THE APPEAL RAISES SERIOUS QUESTIONS CONCERNING
THE ORIGIN, STRUCTURE, AND LATER USE OF THE
UNDERLYING JPMC-RELATED PROCEEDINGS……………………………5

    A. The Underlying Proceedings Arose Through
    Unusual Ex Parte and Non-Public Processes………………………………5

    B. Significant Portions of the Proceedings
    Occurred Outside Ordinary Docketed Litigation Structures………………6

    C. Materials Were Transmitted Across Proceedings
    Outside Ordinary Discovery Mechanisms…………………………………8

    D. The Proceedings Operated Under Significant Confidentiality
    Expectations and Atypical Safeguards……………………………….…..9

    E. Plaintiff Repeatedly Attempted to Raise and Preserve These
    Structural and Procedural Concerns Before the District Court…….….…11

    F. The Appeal Raises Serious Questions Concerning Whether Such
    Materials May Later Be Publicly Disseminated in Separate Litigation….12

III. IRREPARABLE HARM STRONGLY FAVORS
MAINTAINING THE STAY……………………………………………….…13

IV. DEFENDANT'S OPPOSITION MISCHARACTERIZES BOTH
THE DISTRICT COURT'S ORDER AND THE ISSUES
PRESENTED ON APPEAL…………………………………………….…..17

i

A. Defendant Overstates the Scope of the District
Court's Sanctions Findings……………………………………………………..17

B. Defendant Omits the Extraordinary Procedural
Context Underlying the JPMC Proceedings………………………………18

C. Defendant Improperly Relies on Unresolved Media Allegations………19

D. Defendant Misapplies the Public-Access Authorities
Upon Which It Relies………………………………………………….…..20

E. Defendant Mischaracterizes the Nature of the Appeal Itself…….….…22


CONCLUSION ..................................................................................................23

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,*
598 F.3d 30 (2d Cir. 2010) ..................................................................... 3

*Doe v. Black,*
No. 23-CV-6418 (JGLC), 2026 WL 1102540 (S.D.N.Y. Apr. 23, 2026)...... *passim*

*Doe v. Colgate Univ.,*
*No. 5:15-cv-1069, 2016 WL 1448829, at \*2 (N.D.N.Y. Apr. 12, 2016)*............ 14, 21

*Gambale v. Deutsche Bank AG,*
377 F.3d 133 (2d Cir. 2004) ..................................................................... 4

*Lugosch v. Pyramid Co. of Onondaga,*
435 F.3d 110, 120 (2d Cir. 2006).......................................................... 20, 22

*Mohammed v. Reno,*
309 F.3d 95, 101 (2d Cir. 2002)............................................................... 3

*Nken v. Holder,*
556 U.S. 418 (2009) ............................................................................. 16

*Sealed Plaintiff v. Sealed Defendant,*
537 F.3d 185, 189–90 (2d Cir. 2008)..................................................... 14, 21

*United States v. Amodeo,*
71 F.3d 1044, 1049–50 (2d Cir. 1995)................................................... 20, 22

iii

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this reply in further support of her motion to stay the district court's unsealing directives pending appeal. Defendant's opposition largely attempts to re-litigate disputed factual allegations and expand limited sanctions findings into sweeping merits determinations that the district court itself expressly declined to make. In doing so, Defendant fails to meaningfully address the central appellate questions presently before this Court.

Most critically, Defendant's opposition largely ignores the unusual procedural framework from which the disputed materials originated. Even the district court acknowledged that parallel and atypical proceedings occurred outside ordinary litigation structures and involved significant confidentiality expectations, sealed submissions, and non-public processes. Yet Defendant's opposition does not meaningfully confront the substantial appellate question raised here: whether materials generated through an unusual off-docket process — initiated through ex parte intervention by a non-party in separate litigation, outside ordinary adversarial safeguards, under significant confidentiality expectations, and amid substantial docket irregularities and non-public proceedings — may later be imported wholesale into separate federal litigation and irreversibly disseminated through public unsealing orders.

Plaintiff respectfully submits that these issues are neither frivolous nor collateral. They present substantial questions concerning procedural fairness,

1

reliance interests, confidentiality expectations, and the proper treatment of materials arising from highly unusual judicial processes that differed materially from ordinary adversarial litigation. Plaintiff has attached under seal representative materials reflecting these concerns, including ex parte submissions, cross-forum transmissions of sealed materials, and record-clarification materials concerning the underlying proceedings. See Sealed Appendix Exhibits A-I.

Defendant's opposition instead attempts to minimize these substantial procedural and appellate concerns by reframing the matter as though it involved only ordinary judicial records generated through conventional public litigation. But that characterization itself is one of the core issues presently on appeal.

## ARGUMENT

## I. PLAINTIFF HAS SATISFIED THE STANDARD FOR A STAY PENDING APPEAL

A stay pending appeal is appropriate where the movant demonstrates sufficiently serious questions going to the merits, irreparable harm absent interim relief, and that the balance of equities and public interest favor preservation of the status quo pending appellate review. Plaintiff respectfully submits that each of those considerations strongly supports temporary relief here.

First, Plaintiff's appeal raises substantial and non-frivolous appellate questions concerning the treatment and public dissemination of materials arising

2

from highly unusual proceedings involving sealed submissions, confidentiality protections, non-public processes, and significant departures from ordinary adversarial litigation structures. As discussed further below, the appeal presents serious questions regarding whether materials generated through such atypical proceedings may later be imported wholesale into separate federal litigation and irreversibly unsealed notwithstanding the confidentiality expectations and procedural irregularities surrounding their creation.

At this stage, Plaintiff need not establish certain success on appeal. A stay pending appeal may be warranted where the movant demonstrates sufficiently serious questions going to the merits together with irreparable harm and a balance of hardships tipping in the movant's favor. See *Mohammed v. Reno,* 309 F.3d 95, 101 (2d Cir. 2002); *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35–38 (2d Cir. 2010). Rather, substantial and non-frivolous appellate questions warranting meaningful review are sufficient, particularly where the requested relief merely preserves the status quo pending appellate consideration of disclosure that cannot later be effectively undone once public dissemination occurs.

Second, the irreparable harm resulting from disclosure is overwhelming and irreversible. Once the disputed materials are publicly disseminated, confidentiality cannot be restored through later appellate relief. Public disclosure would permanently destroy the very interests Plaintiff seeks to preserve on appeal,

3

including pseudonymity protections, confidentiality expectations surrounding sealed proceedings, privacy interests concerning intensely personal materials, and the ability to obtain meaningful appellate review before irreversible dissemination occurs. Courts have repeatedly recognized that the loss of confidentiality and anonymity through public disclosure constitutes quintessential irreparable harm because "the bell cannot be unrung" once sensitive information enters the public domain. Courts have repeatedly recognized that disclosure of confidential or sealed materials constitutes irreparable harm because confidentiality cannot be restored once information enters the public domain. See *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 144 (2d Cir. 2004) ("[T]he genie is out of the bottle.").

Third, the balance of equities and public interest favor temporary preservation of the status quo pending appellate review. Plaintiff does not seek destruction or permanent sealing of records at this stage. Rather, Plaintiff seeks only limited interim relief maintaining existing protections long enough for this Court to meaningfully review the substantial appellate questions presented. By contrast, Defendant identifies no meaningful prejudice arising from a temporary stay preserving the status quo while appellate review proceeds.

Indeed, the public interest is served — not harmed — by ensuring careful appellate review before unusually generated and highly sensitive materials are irreversibly disclosed through public unsealing orders. Maintaining the stay pending appeal will preserve the integrity of appellate review while minimizing the

4

risk of irreversible harm should Plaintiff ultimately prevail on any aspect of the appeal.

Accordingly, Plaintiff respectfully submits that a stay pending appeal remains warranted.

## II. THE APPEAL RAISES SERIOUS QUESTIONS CONCERNING THE ORIGIN, STRUCTURE, AND LATER USE OF THE UNDERLYING JPMC-RELATED PROCEEDINGS

### A. The Underlying Proceedings Arose Through Unusual Ex Parte and Non-Public Processes

Defendant's opposition attempts to characterize the underlying JPMC-related proceedings as ordinary public litigation generating routine judicial records subject to broad dissemination. But the disputed materials arose through an unusual procedural framework involving ex parte communications, sealed proceedings, non-public submissions, and overlapping parallel processes materially different from conventional adversarial litigation.

As reflected in Plaintiff's sealed appendix, the proceedings appear to have originated through ex parte communications submitted directly to Judge Rakoff concerning Plaintiff's participation in the JPMC compensation process, notwithstanding that Defendant Black was not a party to that proceeding. Plaintiff's use of terms such as "ex parte," "off-docket," "sealed," and "non-public" is drawn directly from the terminology appearing within the underlying submissions and related materials. See Sealed Appendix Exhibits A-I.

Judge Rakoff himself described aspects of the process as involving a "continuing, ex parte, oversight role" concerning allocation-related disputes. Subsequent proceedings involved sealed hearings, confidential submissions, and cross-forum exchanges of sensitive materials outside ordinary public litigation structures.

The district court likewise acknowledged that significant portions of these proceedings occurred outside conventional public litigation mechanisms and involved substantial confidentiality expectations. Yet Defendant's opposition largely ignores those circumstances and instead attempts to recast the resulting materials as though they arose through ordinary public discovery and docketed litigation.

Plaintiff's appeal therefore raises substantial questions concerning whether materials generated through such atypical and confidential processes may later be imported wholesale into separate federal litigation and irreversibly disseminated through public unsealing orders. These issues go directly to the procedural integrity of the unsealing process itself and strongly support preserving the status quo pending appellate review.

**B. Significant Portions of the Proceedings Occurred Outside Ordinary Docketed Litigation Structures**

Plaintiff's appeal further raises substantial questions concerning the extent to which significant portions of the underlying proceedings operated outside conventional docketed litigation structures typically associated with public federal adjudication.

As reflected in Plaintiff's sealed appendix, multiple submissions, hearings, rulings, and related proceedings later referenced throughout the sanctions litigation do not appear to have been publicly docketed through ordinary mechanisms permitting transparent review and procedural clarity. Plaintiff previously raised concerns regarding the apparent absence of referenced letters, hearings, and adjudicative actions from the originating docket structure itself.

These concerns materially affected Plaintiff's ability to understand, challenge, and seek review of significant developments occurring during the underlying proceedings. Portions of the process appear to have operated through a hybrid structure involving sealed communications, non-public submissions, and proceedings occurring outside publicly accessible docket systems.

Materials generated through these atypical processes were later transmitted across proceedings and imported into separate litigation despite the absence of many safeguards ordinarily accompanying public federal litigation. Defendant's opposition largely disregards these structural irregularities and instead treats all resulting materials as though they arose through ordinary public litigation subject to routine disclosure principles.

7

But whether materials generated through such an atypical procedural environment may later be publicly disseminated wholesale presents a substantial appellate question warranting careful review before irreversible disclosure occurs.

## C. Materials Were Transmitted Across Proceedings Outside Ordinary Discovery Mechanisms

Plaintiff's appeal also raises substantial questions concerning the manner in which sensitive materials generated within the underlying JPMC-related proceedings were later transmitted across separate proceedings outside ordinary discovery mechanisms.

As reflected in Plaintiff's sealed appendix and related filings below, materials originating within confidential and non-public proceedings were later exchanged, referenced, or incorporated into parallel litigation outside conventional adversarial discovery processes. Those materials included sealed submissions, trauma-related disclosures, journal materials, medical information, and confidential communications generated within proceedings operating under significant confidentiality expectations.

Unlike ordinary discovery exchanged within a single public litigation framework, the materials at issue here arose through overlapping proceedings involving differing procedural structures, confidentiality protections, and adjudicative mechanisms. Significant portions of the disputed materials appear to have migrated from confidential JPMC-related proceedings into *Doe v. Black*

through sealed submissions, non-public exchanges, and related cross-forum communications.

Plaintiff has consistently maintained that substantial disputes remain concerning the circumstances under which certain materials were introduced, transmitted, or later relied upon in separate proceedings, including issues concerning confidentiality expectations, consent, and procedural fairness.

Defendant's opposition largely disregards these unusual cross-proceeding dynamics and instead treats the resulting materials as though they were ordinary judicial records generated through standard public litigation procedures. But Plaintiff's appeal raises substantial questions concerning whether materials originating within confidential and atypical proceedings may later be publicly disseminated notwithstanding the extraordinary circumstances surrounding their creation and transmission.

## D. The Proceedings Operated Under Significant Confidentiality Expectations and Atypical Safeguards

The appeal likewise raises substantial questions concerning the confidentiality expectations and atypical safeguards under which the underlying JPMC-related proceedings operated.

As the district court itself recognized, substantial portions of the proceedings occurred under sealed conditions, involved non-public submissions, and operated under confidentiality structures materially different from those ordinarily

governing conventional public litigation. Testimony concerning deeply personal matters — including trauma-related experiences, medical information, and reproductive history — was elicited within proceedings participants reasonably understood to involve restricted dissemination.

Those confidentiality expectations formed an integral component of the procedural framework through which claimants participated in the JPMC process and related proceedings. Significant aspects of the proceedings operated under structures suggesting heightened privacy protections and limited public dissemination, particularly with respect to intensely personal trauma-related disclosures.

These concerns are especially significant given the nature of the materials later ordered unsealed, including trauma disclosures, journal materials, medical and reproductive information, mental-health discussions, and other highly sensitive records generated within proceedings differing substantially from ordinary adversarial public litigation.

Defendant's opposition largely minimizes these confidentiality expectations and instead characterizes the proceedings as involving ordinary judicial records subject to routine public-access principles. But Plaintiff's appeal raises substantial questions concerning whether the extraordinary procedural and confidentiality structures surrounding these proceedings materially distinguish them from

10

conventional public litigation records and therefore warrant more careful consideration before irreversible dissemination occurs.

### E. Plaintiff Repeatedly Attempted to Raise and Preserve These Concerns Before the District Court

Plaintiff repeatedly attempted to alert the district court to the unusual procedural structure, confidentiality concerns, and cross-proceeding transmission issues underlying the materials now subject to public unsealing. These concerns were not raised for the first time on appeal.

Throughout the district court proceedings, Plaintiff filed multiple motions, letters, and supporting exhibits addressing the atypical nature of the underlying JPMC-related proceedings and the later transmission of materials generated through those proceedings into this separate federal action. Plaintiff filed motions in limine concerning the use of JPMC-related materials and later submitted additional filings addressing concerns regarding the apparent absence of originating public docket entries connected to proceedings and materials later referenced within the sanctions record. (See Sealed Exhibits A-D.)

Plaintiff additionally submitted materials attempting to document the pathways through which information and materials were transmitted across proceedings outside ordinary discovery mechanisms, including concerns regarding cross-case use of confidential or non-public materials.

11

Plaintiff also alerted the district court to concerns regarding ongoing cross-case coordination and communications after Plaintiff was inadvertently copied on communications involving Defendant's counsel discussing contacting Judge Rakoff concerning overlapping proceedings. Plaintiff brought those communications to the district court's attention as further evidence of the continuing procedural overlap between the separate proceedings at issue. (Sealed Exhibits E-I.)

These repeated efforts demonstrate that the appellate questions presented here are substantial, genuine, and long-standing — not post hoc objections advanced solely for purposes of interim relief.

## F. The Appeal Raises Serious Questions Concerning Whether Such Materials May Later Be Publicly Disseminated in Separate Litigation

Taken together, the extraordinary procedural circumstances surrounding the underlying JPMC-related proceedings raise substantial and non-frivolous appellate questions concerning whether materials generated through such processes may later be publicly disseminated wholesale within separate federal litigation.

The disputed materials did not arise through ordinary public adversarial litigation conducted within a single transparent docket structure. Rather, the proceedings involved ex parte initiation, partially non-public processes, sealed submissions, confidential hearings, cross-forum transmission of sensitive materials, and significant departures from conventional public litigation structures.

12

Defendant's opposition largely collapses those distinctions and attempts to treat the resulting materials as though they were ordinary judicial records generated exclusively through standard public litigation procedures. But Plaintiff respectfully submits that the atypical nature of these proceedings raises serious appellate questions concerning whether wholesale retroactive public dissemination is appropriate where the materials include deeply personal trauma disclosures, medical and mental-health information, journal materials, reproductive information, sealed testimony, and other highly sensitive records generated within hybrid and partially non-public proceedings.

Those concerns are amplified by the irreversible nature of the disclosure ordered below. Once publicly disseminated, the confidentiality interests surrounding these materials cannot meaningfully be restored through later appellate relief.

Maintaining a temporary stay pending appeal would merely preserve the status quo while this Court evaluates serious questions concerning confidentiality, procedural fairness, reliance interests, and the retroactive public dissemination of materials originating from unusually structured and largely non-public proceedings.

## III. IRREPARABLE HARM STRONGLY FAVORS MAINTAINING THE STAY

13

The irreparable harm resulting from disclosure of the disputed materials is immediate, severe, and incapable of meaningful remediation through later appellate relief. Once the materials are publicly disseminated, confidentiality cannot realistically be restored, pseudonym protections cannot fully be reclaimed, and the resulting harms to Plaintiff and third parties cannot be undone. Courts have repeatedly recognized the importance of protecting anonymity and privacy interests in cases involving sexual assault allegations, trauma-related disclosures, and other highly sensitive personal information. See *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008); *Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) ("protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected.").

Plaintiff has already experienced significant real-world harms arising from public dissemination and discussion of sensitive information connected to this litigation, including doxxing, online harassment, unwanted public exposure, invasive media attention, and threats directed toward Plaintiff and members of Plaintiff's family. Those harms are not speculative. Plaintiff has repeatedly informed the district court of ongoing safety concerns, harassment, and dissemination of identifying information arising throughout the course of these proceedings.

14

The risk of further irreversible harm is particularly acute given the nature of the materials at issue. The disputed records include deeply personal trauma disclosures, medical and mental-health information, reproductive information, journal materials, confidential communications, family-related information, and testimony generated within proceedings operating under significant confidentiality expectations. Once publicly released, such materials may be permanently copied, disseminated online, republished by third parties, indexed through internet search engines, and amplified through media coverage in ways that no later sealing order could realistically reverse.

Indeed, Plaintiff respectfully submits that aspects of the unsealing process below have already resulted in disclosure of intensely personal and disputed information unnecessary to resolution of the core issues presently before this Court. Certain materials incorporated into the broader proceedings included highly sensitive family-related allegations and personal information originating from parallel proceedings not ordinarily litigated within this case itself. Plaintiff respectfully submits that the public dissemination of such information has already contributed to harassment and targeting directed toward Plaintiff's family members, including individuals not involved in this litigation and minor children whose privacy interests are substantial.

These harms extend beyond Plaintiff alone. The proceedings at issue involved sensitive disclosures by individuals participating in confidential or partially non-

public processes relating to sexual abuse, trafficking, trauma, and mental-health issues. Plaintiff respectfully submits that retroactive public dissemination of materials generated under such unusual confidentiality structures risks creating a substantial chilling effect on future participants who may otherwise rely upon confidentiality protections when deciding whether to provide sensitive information within similar proceedings.

Moreover, once disclosure occurs, meaningful appellate review becomes substantially impaired. Even if Plaintiff ultimately prevails on appeal in whole or in part, the practical reality is that sensitive information released publicly cannot meaningfully be "re-sealed." Courts have repeatedly recognized that disclosure of confidential information constitutes quintessential irreparable harm precisely because the injury cannot later be undone after dissemination enters the public domain.

Under these circumstances, preserving the stay pending appeal is necessary to protect the integrity of the appellate process itself. Temporary maintenance of the status quo will ensure that this Court may meaningfully review the substantial procedural, confidentiality, and structural questions presented before irreversible disclosure permanently extinguishes the very interests Plaintiff seeks to preserve on appeal. The principal purpose of interim relief pending appeal is to preserve the status quo so that meaningful appellate review remains possible. See *Nken v. Holder*, 556 U.S. 418, 428–34 (2009).

16

## IV. DEFENDANT'S OPPOSITION MISCHARACTERIZES BOTH THE DISTRICT COURT'S ORDER AND THE ISSUES PRESENTED ON APPEAL

### A. Defendant Overstates the Scope of the District Court's Sanctions Findings

Defendant repeatedly portrays the sanctions order as conclusively establishing a sweeping "fraud" infecting the entirety of Plaintiff's claims. The district court did not so hold.

Although the court identified certain conduct it deemed sanctionable — including findings relating to three sonogram images, issues arising from deletion of Twitter-related evidence after former counsel directed Plaintiff to delete social media accounts, and misleading statements by counsel — the court expressly declined to impose case-terminating sanctions and repeatedly emphasized the limited procedural posture of the litigation, including incomplete discovery, unresolved factual disputes, and the absence of an evidentiary hearing.

Most significantly, the district court did not conclude that Plaintiff's journals were wholesale fabrications, did not determine that Plaintiff never met Jeffrey Epstein, and did not hold that Plaintiff's claims constituted an overall fabricated fraud scheme. To the contrary, the court expressly stated that it "cannot conclude that the journals are wholesale fabrications." Nor did the court conclude that disputes concerning aspects of Plaintiff's Epstein-related history necessarily resolved the separate allegations against Defendant Black.

17

Had the district court concluded that Plaintiff's claims were definitively fabricated in their entirety, dismissal would have followed. Instead, the court expressly declined to impose the extraordinary remedy Defendant sought. Defendant's opposition therefore substantially overstates the sanctions ruling in an effort to minimize the serious appellate questions presently before this Court concerning confidentiality, sealing, and retroactive public dissemination of materials originating from unusual and non-public proceedings.

## B. Defendant Omits the Extraordinary Procedural Context Underlying the JPMC Proceedings

Defendant further attempts to portray the underlying JPMC materials and proceedings as though they arose through ordinary public adversarial litigation. But the district court itself recognized that the relevant proceedings occurred within an extraordinarily atypical procedural environment marked by confidentiality protections, sealed testimony, non-public submissions, and unusual structural mechanisms operating outside ordinary public litigation processes.

Substantial portions of the proceedings were never publicly docketed in the manner typical of ordinary federal litigation. Testimony occurred in sealed settings. Certain submissions and adjudicative processes operated outside conventional docket structures. And materials generated within those proceedings were later transmitted across proceedings and imported into separate litigation outside ordinary discovery mechanisms.

18

Plaintiff's appeal raises serious and non-frivolous questions concerning whether materials generated within such highly unusual and confidential proceedings may later be publicly disseminated in separate litigation notwithstanding the reliance interests, confidentiality expectations, and atypical procedural safeguards surrounding their creation. Defendant's opposition largely ignores those issues altogether.

## C. Defendant Improperly Relies on Unresolved Media Allegations

Defendant likewise overstates unresolved allegations concerning purported media disclosures in an effort to invoke equitable doctrines such as "unclean hands." Yet Defendant's own wording underscores the speculative nature of those assertions, repeatedly relying on phrases such as materials having "appear[ed] to have leaked" or being "apparently leaked."

At the time Defendant filed its opposition, the district court had not resolved those factual issues, nor had Plaintiff's response deadline even passed. Plaintiff thereafter submitted a response disputing Defendant's characterization of the relevant events and specifically contesting the suggestion that Plaintiff leaked sealed filings or confidential transcripts to any reporter.

Defendant additionally omits important context regarding both the limited nature of the interactions at issue and prior dissemination concerns arising independently through the Court's own filing systems, including the inadvertent

19

public disclosure of Plaintiff's CTS opposition materials through the Pro Se Office addressed in ECF No. 281.

At minimum, these disputed and unresolved factual allegations provide no basis to deny temporary appellate relief designed solely to preserve the status quo pending review of substantial confidentiality, sealing, and procedural questions presently before this Court.

**D. Defendant Misapplies the Public-Access Authorities Upon Which It Relies**

Defendant repeatedly invokes general public-access principles as though the mere existence of judicial involvement automatically requires wholesale public dissemination of the disputed materials. But the very authorities upon which Defendant relies make clear that the presumption of public access is neither absolute nor mechanically applied without regard to the nature of the materials at issue and the circumstances under which they were generated.

As the Second Circuit explained in *Lugosch v. Pyramid Co. of Onondaga*, courts must balance any presumption of access against "competing considerations" including privacy interests, fairness concerns, and the potential for harm resulting from disclosure. 435 F.3d 110, 120 (2d Cir. 2006). Likewise, *United States v. Amodeo* emphasized that the weight afforded any presumption of access depends substantially upon "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring

20

the federal courts." 71 F.3d 1044, 1049–50 (2d Cir. 1995). The Second Circuit further recognized that intensely personal information, privacy interests, and the potential for injury resulting from disclosure remain critical considerations in the balancing analysis. *Id.* at 1050–51.

Those principles are especially important here. The disputed materials did not arise through ordinary public civil litigation conducted entirely within conventional adversarial discovery structures. Rather, the materials originated within highly unusual proceedings involving sealed submissions, confidential trauma-related disclosures, non-public processes, off-docket mechanisms, and significant confidentiality expectations materially different from ordinary federal litigation.

Moreover, the materials at issue include deeply sensitive medical, reproductive, mental-health, trauma-related, and family information concerning not only Plaintiff but also third parties and minor children whose privacy interests are substantial. Courts have repeatedly recognized the importance of protecting anonymity and privacy interests in cases involving sexual assault allegations, trauma-related disclosures, and highly sensitive personal information. See *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008); *Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) ("protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected.").

21

Defendant's opposition largely ignores these balancing principles and instead treats the disputed materials as though they were ordinary public judicial records automatically subject to unrestricted dissemination. But Plaintiff's appeal raises substantial questions concerning whether the balancing required under *Lugosch* and *Amodeo* was properly applied in light of the extraordinarily unusual procedural posture, confidentiality expectations, and irreversible harms associated with disclosure here.

**E. Defendant Mischaracterizes the Nature of the Appeal Itself**

Finally, Defendant repeatedly attempts to frame this appeal as an improper attack on the judiciary or an effort to evade accountability for disputed sanctions findings. It is neither.

Plaintiff's appeal instead raises substantial questions concerning the procedural fairness and later public dissemination of materials generated through unusually structured and highly confidential proceedings involving sealed testimony, non-public submissions, off-docket processes, and significant reliance interests.

Meaningful appellate scrutiny of atypical judicial procedures is not improper; it is a central feature of appellate review itself. Particularly where proceedings deviate substantially from ordinary public litigation structures and involve irreversible disclosure of deeply sensitive materials, litigants must be permitted to

seek orderly appellate review before confidentiality protections are permanently undone.

Because the harms resulting from disclosure cannot later be meaningfully reversed, preservation of the status quo pending appellate review strongly remains warranted here.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the present appeal raises substantial and non-frivolous questions concerning the unusual origin, structure, confidentiality expectations, and later public dissemination of materials generated through atypical JPMC-related proceedings operating outside ordinary adversarial litigation mechanisms. Defendant's opposition largely attempts to minimize those issues by overstating unresolved sanctions findings, reframing disputed allegations as conclusively adjudicated facts, and disregarding the extraordinary procedural environment from which the challenged materials arose.

But the question presently before this Court is not whether the ultimate merits of every disputed factual issue have already been resolved. Rather, the question is whether serious appellate issues exist warranting preservation of the status quo pending orderly appellate review where disclosure would inflict immediate and irreversible harm.

Here, once the challenged materials are publicly disseminated, the resulting

23

injuries cannot meaningfully be undone. Public disclosure would permanently destroy confidentiality interests surrounding highly sensitive trauma-related materials, substantially impair Plaintiff's pseudonym protections, intensify ongoing safety and harassment concerns, and risk broader chilling effects upon similarly situated participants in confidential victim-compensation and trauma-related proceedings. No later appellate ruling could realistically restore those interests once disclosure occurs.

Maintaining the stay pending appeal would merely preserve the existing status quo for a limited period while this Court evaluates serious questions concerning confidentiality, procedural fairness, reliance interests, and the retroactive public dissemination of materials originating from unusually structured and largely non-public proceedings. By contrast, denial of interim relief would effectively moot substantial portions of the appeal before meaningful review can occur.

Accordingly, Plaintiff respectfully requests that this Court maintain the stay pending appeal and grant such further relief as the Court deems just and proper.

Dated: May 21, 2026 /s/ *Jane Doe*
Haymarket, Virginia Jane Doe

24

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure 32(g)(1) and Local Rule 32.1(4), I certify that the foregoing brief is proportionately spaced using 14- point Times New Roman font and contains 4,380 words, excluding the parts exempted from length limits by Federal Rule 32(f).

Dated: May 21, 2026                                        /s/ *Jane Doe*
Haymarket, Virginia                                        Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2026, I caused a true and correct copy of the foregoing Reply in Support of Plaintiff-Appellant's Motion for Stay Pending Appeal, together with any accompanying sealed exhibit appendix, to be served upon all counsel of record by electronic mail and by mail where appropriate.

Dated: May 21, 2026

Respectfully submitted,

/s/ *Jane Doe*
Jane Doe
Plaintiff-Appellant, *Pro Se*
P.O. Box 286
Haymarket, Virginia 20169
202-407-6947
Jane.doe06418@gmail.com